IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

UNITED STATES OF AMERICA     :

    :     DOCKET NO. 7:14-CR-48 (HL)

VS.     :

    :

SARAH CARTER     :

_____ :

**FILED**

OCT -1 2015

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA

<u>PLEA AGREEMENT</u>

It is agreed by the United States of America, by and through its undersigned attorney, and

Sarah Carter hereinafter referred to as "Defendant," and Defendant's undersigned attorney, as

follows:

(1)

Defendant acknowledges that Defendant has reviewed and discussed the Information

against Defendant in this matter with Defendant's attorney and Defendant's attorney has

explained to Defendant his understanding of the government's evidence.

(2)

The Defendant understands that Defendant is not required to plead guilty, and that

Defendant has the right to plead not guilty and to elect instead to be tried by jury. The Defendant

understands that at a jury trial, Defendant would enjoy a presumption of innocence, and that the

government would have the burden of proving Defendant's guilt beyond a reasonable doubt.

The Defendant understands that Defendant would be entitled to the services of a lawyer at all

stages of such a trial. The Defendant understands that Defendant would be entitled to confront

and to cross-examine the government's proof, and to present witnesses and evidence in

defendant's own behalf. The Defendant understands that Defendant would have the right to

testify in Defendant's own behalf, but that Defendant could not be compelled to do so. Defendant has discussed these rights with Defendant's attorney. Defendant is satisfied with the services of Defendant's lawyer. Defendant knowingly and voluntarily waives Defendant's right to plead not guilty and to proceed to trial.

The United States Attorney and the Defendant understand and agree that the Court should consider its sentence in light of the advisory Federal Sentencing Guidelines, as explained in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). Defendant knowingly and voluntarily waives any further objections that Defendant may have based on Booker, Apprendi v. New Jersey, 530 U.S. 466 (2000), and their progeny. So the Defendant agrees that at sentencing the Court may determine any pertinent fact by a preponderance of the evidence and the Court may consider any reliable information, including hearsay. The Defendant expressly waives any claim of right to an indictment, trial by jury, and/or proof beyond a reasonable doubt on any factual determinations that pertain to sentencing in this case.

(3)

Defendant being fully cognizant of Defendant's rights, and in exchange for the considerations to be made by the United States as set forth in paragraph (4) below, agrees pursuant to Rule 11(c), Federal Rules of Criminal Procedure, as follows:

(A)    The Defendant is guilty and will knowingly and voluntarily enter a plea of guilty to Count One of the Information which charges Defendant with Conspiracy to Possess with Intent to Distribute Cocaine and Cocaine Base, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and 841(b)(1)(B).

(B)    That defendant fully understands that Defendant's plea of guilty as set forth in Subparagraph (A), above, will subject Defendant to a maximum sentence of not less than five (5)

2

years imprisonment, with a maximum term of imprisonment of forty (40) years, a maximum fine of $5,000,000.00, or both, and a term of supervised release of four (4) years on Count One. Defendant further acknowledges that the Court is required to impose a mandatory assessment of $100.00 per count.

(C)     The Defendant acknowledges and understands that the Court is not bound by any estimate of the advisory sentencing range that Defendant may have received from Defendant's counsel, the government, or the Probation Office.  The Defendant further acknowledges and agrees that Defendant will not be allowed to withdraw Defendant's plea because Defendant has received an estimated guideline range from the government, Defendant's counsel, or the Probation Office which is different from the advisory guideline range computed by the Probation Office in the Presentence Report and found by the Court to be the correct advisory guideline range.

(D)     The Defendant understands fully and has discussed with Defendant's attorney that the Court will not be able to consider or determine an advisory guideline sentencing range until after a pre-sentence investigative report has been completed.  The Defendant understands and has discussed with Defendant's attorney that the Defendant will have the opportunity to review the pre-sentence investigative report and challenge any facts reported therein.  The Defendant understands and has discussed with Defendant's attorney that any objections or challenges by the Defendant or Defendant's attorney to the Pre-Sentence Report, the Court's evaluation and rulings on that Report, or the Court's sentence, will not be grounds for withdrawal of the plea of guilty.



(E)     Defendant understands and has discussed with Defendant's attorney that after the Court considers the advisory guideline range for this case, the Court will have the discretion to impose a sentence that is more severe or less severe than the advisory guideline range.

(F)     Defendant agrees to provide a check for the mandatory assessment at the time of sentencing.

(G)     Defendant understands, and has fully discussed with Defendant's attorney, that the Court shall order total restitution in this case pursuant to 18 U.S.C. § 3663A and that Defendant agrees to pay the restitution ordered by the Court whether to an identifiable victim or the community.

(H)     The Defendant understands that ordinarily Title 18, United States Code, Section 3742, will in certain cases allow for a direct appeal after sentencing followed by the Court of Appeals' limited review of a Defendant's sentence.  But once this agreement is accepted and sentence is imposed by the District Court, Defendant by this agreement forever waives any right to an appeal or any other court review of defendant's sentence, and the Defendant's waiver includes any collateral attack on the District Court's sentence.  However, in the event that the District Court imposes a sentence that exceeds the advisory guideline range as determined by the District Court, then the Defendant shall retain the right to pursue a timely appeal of the sentence directly to the Court of Appeals after the District Court imposes its sentence.

The Defendant and the United States Attorney agree that nothing in this plea agreement shall affect the government's opportunity to appeal as set forth in Title 18, United States Code, Section 3742(b).  If, however, the United States Attorney notices an appeal of the Defendant's sentence, then the Defendant shall have the right to cross-appeal from the sentence.

4



(I)     The Defendant understands that the Government may have various items of biological evidence in its possession in connection with this case that could be subjected to DNA testing.   Biological evidence for this purpose is defined as any sexual assault forensic examination kit and any other evidence that, in the course of the investigation and prosecution of this matter, has been detected and has been identified as semen, blood, saliva, hair, skin tissue, or some other type of biological material.

The Defendant further understands that following conviction in this case, he could file a motion with the Court to require DNA testing of any such biological evidence pursuant to 18 U.S.C. § 3600 in an attempt to prove Defendant's innocence.   The Defendant fully understands this right to have any and all of the biological evidence in this case tested for DNA, has discussed this right with Defendant's counsel, and knowingly and voluntarily waives the right to have such DNA testing performed on the biological evidence in this case.   Defendant fully understands that because Defendant is waiving this right, the biological evidence in this case will likely be destroyed or will otherwise be unavailable for DNA testing in the future.

(J)     Defendant agrees to provide complete, candid, and truthful statements to law enforcement officers regarding Defendant's involvement and the involvement of all others involved in the charges alleged in the present information as well as any and all criminal violations about which the Defendant has knowledge or information and that such information provided will be pursuant to and covered by this agreement.   The Defendant further agrees to provide complete, candid, and truthful testimony regarding such matters in any proceeding.   The Defendant understands that this agreement does not require the defendant to implicate any particular individual or individuals or to "make a case," rather it requires the Defendant to be truthful and to testify truthfully whenever called upon.

5

The United States of America and Defendant Sarah Carter hereby agree that any breach of this agreement by the Defendant occasioned by a failure to cooperate, by withholding information, giving of false information, perjury, or failure to testify in any judicial proceeding in connection with the individuals, matters, and transactions referred to in the information, would: (a) not relieve the Defendant of Defendant's plea of guilty; (b) permit the government to reinstate and proceed with prosecution on any other charges arising from the matters referred to in this Information; (c) permit the government to instigate and proceed with the prosecution of any other offenses arising from a breach of this agreement, including perjury, false declaration, false statement, and/or obstruction of justice; and (d) permit the government to utilize against the Defendant in any subsequent judicial proceeding any and all statements made by the Defendant. If a legitimate issue arises as to whether or not there has been a breach of this agreement, said question shall be determined by the United States District Court for the Middle District of Georgia. The burden of establishing such a breach shall be upon the United States and shall be established by a preponderance of the evidence. The Federal Rules of Evidence shall not apply in any hearing to establish such a breach, but evidence shall be admitted and excluded at the Court's discretion.

(K)     Defendant agrees to identify the individual or entity from whom he/she purchased the firearms listed in Count Thirteen of the Indictment. Defendant also agrees to identify the location where, the date of, the amount of money paid for, as well as any other pertinent information concerning, the acquisition of the firearms listed in Count Thirteen of the Indictment.



(4)

In exchange for the consideration set forth in Paragraph (3) above, the United States Attorney for the Middle District of Georgia agrees as follows:

(A)     That he will accept the plea of guilty by Defendant as provided in Paragraph (3)(A), above, in full satisfaction of all possible federal criminal charges, known to the United States Attorney at the time of Defendant's guilty plea, which might have been brought solely in this district against the Defendant.

(B)     That he further agrees, pursuant to Rule 11(c)(1)(A), Federal Rule of Criminal Procedure, to move the Court at the time of sentencing to dismiss Counts Twelve, Thirteen, and Fourteen.

(C)     That he further agrees, if the Defendant cooperates truthfully and completely with the government, including being debriefed and providing truthful testimony, at any proceeding resulting from or related to Defendant's cooperation, to make the extent of the Defendant's cooperation known to the sentencing court.  If the Defendant is not completely truthful and candid in his cooperation with the Government, the Defendant may be subject to prosecution for perjury, false statements, obstruction of justice, and/or any other applicable charge.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to 18 U.S.C. Section 3553(e) and/or Section 5K1.1 of the advisory Sentencing Guidelines warranting a government motion at the time of sentencing recommending a downward departure from the advisory guideline range.  If the cooperation is completed subsequent to sentencing, the Government agrees to consider whether such cooperation qualifies as "substantial assistance" pursuant to Rule 35(b) of the Federal Rules of Criminal Procedure warranting the filing of a motion for reduction of sentence

7



within one year of the imposition of sentence. In either case, the Defendant understands that the determination as to whether Defendant has provided "substantial assistance" rests solely with the Government. Any good faith efforts on the part of the Defendant that do not substantially assist in the investigation or prosecution of another person who has committed a crime will not result in either a motion for downward departure from the advisory guideline range or a Rule 35 motion. In addition, should the Defendant fail to cooperate truthfully and completely with the Government, or if the Defendant engages in any additional criminal conduct, the Defendant shall not be entitled to consideration pursuant to this paragraph.

(D)     Pursuant to Section 1B1.8 of the United States Sentencing Guidelines, the Government agrees that any self-incriminating information which was previously unknown to the Government and is provided to the government by the Defendant in connection with Defendant's cooperation and as a result of the Defendant's plea agreement to cooperate will not be used in determining the advisory guideline range. Further, the government agrees not to bring additional charges against the Defendant, with the exception of charges resulting from or related to violent criminal activity, as defined in Title 18, United States Code, Section 924(e)(2)(B)(i), based on any information provided by the Defendant in connection with the Defendant's cooperation, which information was not known to the government prior to said cooperation. This does not restrict the government's use of information previously known or independently obtained for such purposes.

(E)     If the Defendant affirmatively manifests an acceptance of responsibility as contemplated by the Sentencing Guidelines, the United States Attorney will recommend to the Court that the Defendant receive a downward adjustment in the advisory guideline range. But the decision whether the Defendant will receive any sentence reduction for acceptance of

8

responsibility rests within the Court's discretion. The United States expressly reserves its right to furnish to the Court information, if any, showing that the Defendant has not accepted responsibility, including, but not limited to, denying his involvement, giving conflicting statements as to his involvement, or engaging in additional criminal conduct including personal use of a controlled substance.

(5)

Forfeiture Provision

It is further stipulated and agreed that the Defendant shall forfeit all interests in any property constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offense(s) stated in Count One of the Indictment, and any property, real or personal, used or intended to be used in any manner or part to commit, or to facilitate the commission of, the aforesaid violations of Title 21, United States Code, Section 846, in connection with Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), including, but not limited to the following:

**REAL PROPERTY**

A.      The real property located at 6147 Futch Road, Hahira, Cook County, Georgia, and any appurtenances and improvements thereon, which is more particularly described as:

All that tract or parcel of land situate, lying and being in Land Lot No. 507 in the 10th Land District or Cook County, Georgia, and being more particularly described as being all of Lot 2 in Block A of County Line Subdivision, Section I, according to a map or plat of survey thereof recorded in Plat Record Book 8, Page 224, in the office of the Clerk of the Superior Court of Cook County, Georgia, to which map or plat of survey and the record whereof reference is hereby made for all purposes in aid of description. Together with that certain 24 x 70 1991

9

Horton Mobile Home, Summit Model, Serial No. H62271GLR, permanently attached thereto. Said described property is known and designated as 6147 Futch Road, according to the present system of numbering houses in Hahira, Cook County, Georgia.

(hereinafter collectively referred to as the "subject property").

(A)     Defendant agrees to the entry of a preliminary order of forfeiture of the subject property pursuant to Federal Rule of Criminal Procedure 32.2 upon acceptance of Defendant's plea of guilty by the United States District Court, and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant acknowledges that she understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the court to advise her of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), at the time her guilty plea is accepted.

(B)     Defendant agrees that the subject property constitutes or was derived from proceeds obtained, directly and indirectly, and/or was used or intended to be used in any manner or part to commit, or to facilitate the commission of, the aforesaid violations of Title 21, United States Code, Section 846, in connection with Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) set forth in Count One of the Information, and is subject to forfeiture under Title 21, United States Code, Section 853.

(C)     Defendant agrees fully to assist the United States in the forfeiture of the subject property and to take whatever steps are necessary to pass clear title to the subject property to the United States, including but not limited to, surrender of title and execution of any documents necessary to transfer Defendant's interest in any of the subject property to the United States, and



taking whatever steps are necessary to ensure that the property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture.

(D)   Defendant agrees to waive all interest and not file a claim to any of the subject property, or any other property subject to forfeiture, in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal, which may be or has been initiated.

(E)   Defendant agrees to waive Defendant's right to notice of any forfeiture proceeding involving the subject property, or any other property subject to forfeiture, and agrees not to file a claim or assist others in filing a claim in any such forfeiture proceeding.

(F)   Defendant knowingly and voluntarily waives Defendant's right to a jury trial on the forfeiture of the subject property.   Defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of the subject property in any proceeding.   Defendant agrees to waive any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of the subject property by the United States, the State of Georgia, or its subdivisions.

(G)   Defendant agrees that forfeiture of the subject property as authorized herein shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this court may impose upon the Defendant in addition to forfeiture.

(H)   Defendant agrees to hold harmless, release, and forever discharge the United States, its officers, agents, attorneys, servants, and employees, from any and all actions, causes of actions, suits, proceedings, debts, dues, contracts, judgments, damages, claims, or demands whatsoever in law or equity which the Defendant, her successors, or assigns, ever had, now have,

11

or may have, whether known or unknown, in connection with the seizure and forfeiture of the subject property.

(I)     The Government reserves its right to proceed against any remaining assets not identified either in this agreement or in any civil action, if any, which are being resolved along with this plea of guilty, including any property in which the Defendant has any interest or control, if said assets, constitute or were derived from proceeds obtained, directly and indirectly, as a result of violation(s) of Title 21, United States Code, Section 846, in connection with Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) set forth in Count One of the Information.

(J)     Defendant freely, voluntarily, knowingly, and intelligently waives any right to appeal or collaterally attack any matter in connection with the forfeiture of the subject property pursuant to this plea agreement.

(K)     Defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive her, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if Defendant had survived, and that determination shall be binding upon Defendant's heirs, successors and assigns until the agreed forfeiture, is collected in full.

(6)

Nothing herein limits the sentencing discretion of the Court.

(7)

This agreement constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any

12



agent of the United States, including any Assistant United States Attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

(8)

As an aid to this Court, the United States Attorney and the Defendant, by and through Defendant's counsel, enter into the following Stipulation of Fact. This stipulation is entered into in good faith with all parties understanding that the stipulation is not binding on the Court. Under U.S.S.G. Policy Statement Section 6B1.4(d), this Court may accept this stipulation as written or in its discretion with the aid of the Pre-Sentence Report determine the facts relevant to sentencing.

Subject to the above paragraph, the United States Attorney and the Defendant stipulate and agree that the following facts are true and would be proven beyond a reasonable doubt at a trial:

## (A) OVERVIEW OF THE CARTER/MARTINEZ DRUG TRAFFICKING CONSPIRACY

From January 1, 2013, through October 28, 2014, Defendant conspired with members of her family, the Martinez family, and others to distribute not less than five (5) kilograms but not more than fifteen (15) kilograms of cocaine in the Middle District of Georgia. Defendant distributed cocaine acquired by her sons, Andrew Carter and Todd Carter, along with Andrew Carter's partner Jose Martinez. Juan Pablo Cuevas a/k/a "Fatman" and "Fatboy" was a significant source of supply for the Carter/Martinez drug trafficking organization. Andrew Carter and Jose Martinez utilized their respective father-in-law's, James Waters and Juan Sanchez

Hidalgo, to transport payment for the cocaine to Atlanta, Georgia area and bring cocaine back to the Tifton, Georgia area. Chris Waters, James Waters' brother, was also employed to transport cocaine for the organization. Lataris Waters, Andrew Carter's live-in-girlfriend, and Jessica Tellez, Jose Martinez' wife, assisted Andrew Carter and Jose Martinez with the operation of the organization by managing drug proceeds and payments and coordinating drug deliveries. The Defendant's granddaughter, Diamond Carter, and her daughter, Kayla Carter, lived at the Defendant's home at 1569 Georgia Avenue, Omega, Tift County, Georgia. The residence was used for the purposes manufacturing cocaine base, distributing cocaine base, and coordinating the transfer of kilogram quantities exchanges of cocaine and U.S. currency. The Defendant controlled the premises while her granddaughter (Diamond) and her daughter (Kayla) functioned as couriers/mules for Andrew Carter. In addition, Andrew Carter and Lataris Waters' residences located at 186 Crosland Lenox Road, Omega, Colquitt County, Georgia and 6147 Futch Road, Hahira, Cook County, Georgia were also utilized for the distribution of cocaine, the manufacture of cocaine base, and the operation of the drug trafficking organization.

**(B) INVESTIGATION LEADING TO TITLE III INTERCEPTION**

The investigation of the Carter/Martinez drug trafficking organization began in December 2013 following Todd Carter's drug-related arrest and incarceration in the Tift County Jail. Recorded jail telephone calls between Defendant, Andrew Carter, and Todd Carter revealed the brothers, along with Jose Martinez and other members of the conspiracy, were acquiring kilogram quantities of cocaine. Bulk cocaine would then be stored at Todd Carter's residence located at 1211 C.S. Powell Road, Omega, Georgia and Defendant's residence. This activity was consistent with agent surveillance.

14

Confidential sources were also utilized to make purchases of cocaine from Andrew Carter facilitated by Defendant and made at her residence. On July 6, 2014, CS-4 and Vernardo Henley purchased thirty-six (36) ounces of cocaine from Andrew Carter at Sarah Carter's residence. CS-4 stated that Vernardo Henley and CS-4 had been purchasing nine (9) to thirty-six (36) ounces of cocaine from Andrew Carter, two to three times a week since May 2014. Many of these narcotics transactions were facilitated by Defendant at her residence.

Additionally, analysis of vehicle tracker "tracks" showed Andrew Carter meeting with Jose Martinez at Defendant's residence, Andrew Carter's residence, and other locations. Many of these meetings were observed via agent surveillance and pole cameras and revealed Andrew Carter and Jose Martinez exchanging packages such as shoe boxes, duffle bags, plastic grocery store shopping bags, clear plastic bags containing white powder, and firearms.

### (C) TITLE III INTERCEPTION

On August 29, 2014, a valid court-ordered wire intercept was initiated on telephones utilized by Andrew Carter and Lataris Waters to conduct illegal drug trafficking activities for the Carter/Martinez drug trafficking organization. Between August 29, 2014 and September 28, 2014, intercepted wire communications between Andrew Carter and other members of the conspiracy revealed that Andrew Carter and Jose Martinez were acquiring between (10) ten to (15) fifteen kilograms of cocaine per week. In a intercepted communication on August 31, 2014, Jose Martinez and Andrew Carter discussed the acquisition of ten (10) to fifteen (15) kilograms. Jose Martinez stated to Andrew Carter, "I can tell him we can do, ball figure from 10 to 15 maybe more." In addition to facilitating the exchange of kilogram quantities of cocaine and U.S. Currency at her residence, Defendant also distributed and assisted Andrew Carter in distributing cocaine and cocaine base from her residence. In an intercepted communication on September 6,

15

2014, Defendant spoke with Andrew Carter complaining that customers were coming to her residence to purchase cocaine, but she did not have any for sale. Defendant stated, "All these folks coming by wanting something, it done started this morning." Andrew Carter replies that he does not have anything, referring to cocaine. Agent surveillance confirmed this activity. Also during the intercepted communication, Defendant and Andrew Carter discuss cocaine to be acquired by Defendant for manufacture into cocaine base. Defendant asks, "How much do you have to put in there." Andrew Carter replies, "I don't know you at least need to put 11 or 12 in there anyway," referring to grams of cocaine as later discussed in the telephone call. Defendant responds, "I don't want that much. […] I'm talking about making a circle," referring to a cookie of crack cocaine.

Numerous other intercepted communications among Defendant and other members of the conspiracy discussed the further acquisition of cocaine, the funding for cocaine acquisition, the quality of cocaine acquired, the manufacture of cocaine base, the distribution of cocaine and cocaine base, and the roles of members within the Carter/Martinez drug trafficking organization.

**(D) TAKE-DOWN OF CARTER/MARTINEZ DRUG TRAFFICKING ORGANIZATION**

On September 25, 2014, agents executed a search warrant on Defendant's residence located at 1569 Georgia Avenue, Tifton, Georgia. Also living in the home were Kayla Carter, Defendant's daughter, and Diamond Carter, Defendant's granddaughter. Located within Defendant's bedroom was a Marlon rifle with scope, model number 30A, serial number 20157170, a blue cup containing several pieces of suspected crack cocaine, and a quarter cookie of suspected cocaine. Agents also located several boxes of ammunition of various calibers on a table on the front porch and a bag containing several smaller plastic baggies in the living room. The suspected crack cocaine and quarter cookie of suspected cocaine were sent to the Drug

16

Enforcement Administration Laboratory for analysis. The piece of crack cocaine tested positive for cocaine base with a net weight of .28 grams, and the quarter cookie of cocaine tested positive for cocaine with a net weight of 7.8 grams.

For purposes of relevant conduct pursuant to U.S.S.G. §1B1.3, the Government and Defendant stipulate and agree the quantity of cocaine attributable to Defendant is at least 50 kilograms but less than 150 kilograms. The Government and Defendant also stipulate and agree the special offense characteristic at U.S.S.G. § 2D1.1(b)(1)(firearms enhancement), U.S.S.G. § 2D1.1(b)(12)(maintaining premises for drug distribution), and U.S.S.G. § 2D1.1(b)(15)(livelihood) apply, as well as the special offense characteristics at §§2K2.1(b)(4)(stolen firearm) and 2K2.1(b)(6)(B)(firearm in furtherance).

(8)

ACCEPTANCE OF PLEA AGREEMENT

Defendant understands and has fully discussed with defendant's attorney that this agreement shall become effective only upon the Court's acceptance of this agreement and the Court's acceptance of the plea of guilty by the Defendant.

SO AGREED, this ___1st___ day of ___Octhr___, 2015.

MICHAEL J. MOORE
UNITED STATES ATTORNEY

BY: _____
AUSA JULIA C. BOWEN
ASSISTANT UNITED STATES ATTORNEY
GEORGIA BAR NUMBER 046709

17



I, Sarah Carter, have read this agreement and had this agreement read to me by my attorney, James Hardin. I have discussed this agreement with my attorney and I fully understand it and agree to its terms.


SARAH CARTER
DEFENDANT


I, James Hardin, attorney for Defendant Sarah Carter, have explained the Information and the government's evidence received through discovery and my investigation of the charge to Defendant.  I believe Defendant understands the charge against Defendant and the evidence that would be presented against defendant at a trial.  I have read this agreement, have been given a copy of it for my file, and have explained it to Defendant.  To the best of my knowledge and belief, Defendant understands this agreement.


JAMES HARDIN
ATTORNEY FOR DEFENDANT


18